1  PHILLIP A. TALBERT
   United States Attorney
2  DAVID L. GAPPA
   Assistant United States Attorney
3  2500 Tulare Street, Suite 4401
   Fresno, CA 93721
4  Telephone: (559) 497-4000

5  Attorneys for Plaintiff
   United States of America
6

7

8                    IN THE UNITED STATES DISTRICT COURT
9
                     EASTERN DISTRICT OF CALIFORNIA
10

11 | UNITED STATES OF AMERICA,          CASE NO.  1:21-CR-00160 JLT-SKO

12 |              Plaintiff,            GOVERNMENT SENTENCING MEMORANDUM

13 |       v.                           DATE: July 15, 2024
                                        TIME: 10:00 a.m.
14 | NICOLAS ADAN GUERECA,              COURT: Hon. Jennifer L. Thurston

15 |              Defendant.

16

17       **I.      INTRODUCTION**

18       The defendant pleaded guilty on February 12, 2024, to both counts of an indictment that was

19 filed on June 10, 2021.  Specifically, he pleaded guilty to one count of Sexual Exploitation of a Minor in

20 violation of 18 U.S.C. § 2251(a) and one count of Receipt of a Visual Depiction of a Minor Engaged in

21 Sexually Explicit Conduct in violation of 18 U.S.C. § 252(a)(2).  The court has scheduled a sentencing

22 hearing for July 15, 2024.

23       The United States Probation Office submitted a revised presentence investigation report (PSR),

24 dated June 20, 2024, that has outlined the offense conduct, parts of the defendant's personal history, and

25 the ranges for sentencing under the U.S. Sentencing Commission's Sentencing Guidelines (USSG).  The

26 report recommends a total term of imprisonment of 300 months and a lifetime term of supervised

27 release.  It also recommends that no fine be imposed but that the defendant be ordered to pay two

28 mandatory $100 special assessments.  The report also recommends that the court impose the mandatory

   GOVERNMENT SENTENCING MEMORANDUM          1

$5,000 special assessment required under the Justice for Victims of Trafficking Act (JVTA) for each count as well as a $50,000 assessment under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA) of 2018. The defendant did not file any informal objections to the draft PSR. The United States Attorney's Office supports the sentencing recommendations in the PSR.

## II.      THE DEFENDANT'S OFFENSE CONDUCT WAS EXTREMELY SERIOUS

The defendant has repeatedly demonstrated predatory behavior that even an arrest by law enforcement and charges by the Fresno County District Attorney's Office did not deter. Some of that conduct is described in a criminal complaint filed on June 4, 2021. Docket Item 1. Homeland Security Investigations (HSI) Special Agent Monique Jacques supported the complaint with a sworn statement that summarized an investigation initially conducted by the Clovis Police Department (CPD). That agency received a referral from the National Center for Missing & Exploited Children (NCMEC) on approximately March 13, 2020. The referral reported events which happened on July 30, 2019.[1] The CPD learned that Guereca had coerced a 13-year-old girl (CV1) in Clovis to create and then transmit to him through Instagram sexually explicit videos. The CPD, as outlined in paragraphs 10-24 of the complaint affidavit, methodically took steps to confirm the victim's identity and to locate the person they ultimately identified as Guereca. When a CPD detective confronted Guereca at his place of employment on July 24, 2020, he asked whether he would be going to jail. When asked why he had that concern, he stated that he had pictures of "naked girls" on his phone. He suggested that the youngest victim with whom he had had contact was 16 years of age. Docket Item 1 at 7 (paragraph 24). The CPD detective seized Guereca's phone but did not arrest him at that time.

A CPD investigator reviewed the phone that was taken from Guereca on July 24, 2020, as well as phones and other electronic devices that were seized with the authority of a search warrant executed at Guereca's residence in Fresno. A forensic examiner located 29 screenshots, 27 of which showed all or parts of CV1. One image showed CV1's Instagram profile, and another showed a portion of the communications between CV1 and Guereca on July 30, 2019. The examiner also located 10 videos that showed all or parts of CV1, and he recovered the two videos that had been referenced in the NCMEC

---

[1] It appears that Instagram's reporting to NCMEC was delayed by an internal processing glitch by Instagram.

report. The CPD examiner also analyzed an iPhone taken from Guereca and found evidence that it also had been used to communicate with and receive images of sexual exploitation from females who appeared to be as young as 10-12 years of age. For example, an image named CC1C7D10-6927-462A-9BC5-7A53FDD1A45F.JPG with an original capture time of 12/9/2019, at 7:41:49 AM and a creation time of 6/15/2020, at 10:42:58 AM on an iPhone 7 Plus[2] shows an approximately 12-year-old Hispanic female with long black hair lying on her side with her right leg elevated while on top of a yellow blanket decorated with cartoon style mushrooms and a house. The girl is wearing what appears to be a bra and sheer pantyhose. Due to the transparency of the pantyhose, the girl's labia are clearly visible in the photo. The CPD examiner also located evidence that Guereca had used the iPhone to access numerous Instagram, Facebook, and Snapchat accounts. Guereca would engage people he believed to be minors (based on questions about their age) in numerous conversations which relatively quickly became sexually focused.

CPD detectives located Guereca again and transported him to the CPD where he was advised of his Miranda rights, acknowledged, and then waived them. He then agreed to answer questions in an interview that was recorded with audio and video. He stated that he had messaged 13-year old females. He stated he met these females online through Instagram. Guereca stated that he would see a picture of a girl that he liked and message the female. Guereca stated he communicated with these girls in inappropriate ways such as by asking them questions about their bodies. Guereca stated he would ask them about their underwear, bra size, and how big their butt was. He said there was more, and he could go on and on. Guereca stated he would use different usernames on Instagram including "Anthony", "Don", "Jay", "Jason", and "JayRiggs". Guereca admitted that he asked for nude photos from underage (minor) girls and would threaten to expose them to friends and/or family members if they did not continue to send him photos. Guereca admitted saving the photos so he could review them at a later time. Guereca was shown a facial photo of CV1, and Guereca admitted to messaging CV1 and asking for photos and videos. Guereca admitted that he remembered the CV1 crying and asking to stop and he

---

[2] The discrepancy in the dates is likely due to the original image being created on a different device before it was uploaded to an iCloud account and then transferred onto the device from which it was recovered.

GOVERNMENT SENTENCING MEMORANDUM 3

1   continued to ask her for photos.[3]

2        A different victim was discovered when investigators reviewed one of the cellphones taken from

3   Guereca in July 2020.  A CPD report dated August 24, 2020, reveals that a CPD detective confirmed

4   with a person who was 17 years old in early July 2020 that Guereca had communicated with her through

5   electronic messaging.  Guereca then met the minor female in person, engaged in sexual activity with her,

6   and very soon after that began inquiring about the minor's 11-year-old sister.  Docket Item 12,

7   Attachment B.  An HSI agent contacted the victim again, and she confirmed that she and Guereca

8   engaged in sexual activity when she was a minor and that Guereca had then asked questions about her

9   younger sister.  Docket Item 12, Attachment C.   This activity took place after he victimized CV1

10   referenced in the criminal complaint.

11        And the defendant attempted to have sexual contact with other minor females.  The defendant

12   first appeared in federal court in Fresno on June 9, 2021.  Docket Item 5.  After his arrest for his federal

13   case, a different female came forward to say that when she was a 17-year-old high school student,

14   Guereca contacted her through Facebook Messenger.   Guereca picked the victim up at her high school,

15   drove her to his mother's house on Olive Avenue in Fresno, and coerced her into engaging in sexual

16   activity with him.  He continued to coerce her into having a sexual relationship with him and at times

17   physically restrained her to take images of her that were sexually explicit.  Guereca would threaten to

18   send some of these sexually explicit images to her place of employment if she did not continue their

19   relationship and communication with him.  The victim stated that she did not report the crimes to law

20   enforcement, because she feared retribution from Guereca if she did.  Only after he was in federal

21   custody did she feel comfortable filing a police report.  Notably, she stated that after his release from the

22   Fresno County Jail, he attempted to resume contact with her and threatened to distribute some of the

23   sexually explicit images he had taken of her if she did not respond to his overtures.  The victim also

24   reported that Guereca had talked about "underage" girls and that in approximately 2020 he said he met a

25   girl who was then in middle school and took that girl to his house.  When asked for more information, he

26   said he was just "playing."  Docket Item 12, Attachment D.

27

[3] The court can review the separate factual basis that the parties provided to the probation office
28  and court for purposes of sentencing for more details about communications between Guereca and CV1.

The defendant knew that he had been engaging in illegal conduct, because he expressed his concern to an investigator that he might go to jail as a result of the pictures of "naked girls" he had on his phone. He suggested that the girls might have been as young as 16, but once law enforcement reviewed his devices and confronted him with evidence, he conceded that some of the girls might have been as young as 13.

### III. CONGRESSIONAL CONCERN ABOUT THOSE WHO SEXUALLY EXPLOIT CHILDREN REMAINS STRONG AND JUSTIFIES THE SENTENCE RECOMMENDED BY THE PROBATION OFFICE AND THE GOVERNMENT.

Numerous statutory and Sentencing Guidelines amendments have strengthened the mandatory and recommended penalties for federal offenses related to the sexual exploitation of minors, and they are consistent with the sentencing recommendations by the probation office and the government. The defendant is in the general population of sexual offenders that has been deemed worthy of significant federal punishments. Although he might point to some personal challenges in his earlier life, he has offered no objective evidence that any events in his past caused him to commit the crimes to which he pleaded guilty. Government counsel is not aware of any medical or psychological professional who has expressed an opinion that being raised in an environment in which a person is exposed to drug or alcohol abuse and/or domestic violence causes that person to engage in similar behavior. Fortunately, most people exposed to traumatic events in early years do not go on to commit crimes, especially not crimes against children. The defendant is 25 years old, and he committed the offenses for which he faces sentencing against girls who were not even half his age. A better argument for leniency would be for the defendant to admit that he has been unable to control his deviant sexual interests but that he is committed to doing so now and in the future. The argument would be more persuasive if it were supported with evidence of his intentions and actions. Unfortunately, nothing in the record supports any conclusion other than the defendant remains a danger to young females.

The continued focus on people, such as the defendant, who use the internet to sexually exploit children demonstrates that Congress has made this area a legislative priority, and it has attempted to ensure effective prosecution and punishment of offenders. Legislative activity in this area is consistent with a Congressional attempt to "restore the government's ability to prosecute child [exploitation] offenses successfully," by "ensuring that the criminal prohibitions . . . remain enforceable and

1  effective," *United States v. MacEwan*, 445 F.3d 249 n.12 (3rd Cir. 2006).  This need is even more critical

2  as technology and offenders become more sophisticated and the number of potential victims becomes

3  larger while their ages become lower.  This is especially important in a case like this where law

4  enforcement had intervened against the defendant by arresting him for sexually exploiting a minor, and

5  then he reoffended shortly after being release from custody and while his initial charges were still

6  pending in state court.

7  **IV.  RELEVANT SENTENCING FACTORS AND GOVERNMENT RECOMMENDATION**

8  

9  The considerations at 18 U.S.C. § 3553(a)(1) through (6) justify a sentence that includes a term

10  of imprisonment for 300 months followed by a lifetime term of supervised release.

11  **A.  3553(a)(1) – The nature and circumstances of the offense and the history and characteristics of the defendant.**

12  The defendant has demonstrated his sexual interest in minors by trolling social media platforms

13  for profiles of young girls to whom he was sexually attracted.  He admitted in his plea agreement that he

14  contacted at least six people he believed to be minor females to solicit sexually explicit images from

15  them.  His offense conduct is obviously disturbing and justifies the sentence recommended by the

16  probation office.  A prison term of 300 months with sex offender treatment that continues during a

17  lifetime term of supervision will not eliminate the defendant's sexual interest in children, but it should

18  provide him with sufficient insights and techniques to help reduce the risk that he will continue to

19  present to the public, particularly children.  A lifetime term of supervised release is warranted so that he

20  participates in sex offender treatment, is obligated to register as a sex offender, and also participates in

21  any other treatment that his supervising probation officer might recommend as beneficial.  His access to

22  minors, computers, and the internet also should be restricted and subject to the supervision of a

23  probation officer during this time.

24  

25  **B.  3553(a)(2) – The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with necessary educational training, medical care, or other correctional treatment.**

26  

27  The majority of these sentencing factors weigh in favor of a sentence that includes a prison term

28  of 300 months followed by a lifetime term of supervised release.  The defendant would benefit from

1  participating in a lengthy program of sex offender counseling and treatment, and this would best be done
2  within the confines of a Bureau of Prisons (BOP) facility.  Each BOP institution has counseling
3  resources available, and each region also has at least one designated sex offender management and
4  treatment program.  There is also at least one residential treatment program available for inmates who
5  are concluding their custodial sentences.  Imposing the prison term recommended by the probation
6  office would provide the defendant with just punishment, afford adequate deterrence to him and others,
7  protect the public from his recent and repeatedly demonstrated sexual interest in children, and provide
8  the defendant with necessary educational training, medical care, or other correctional treatment.

9      **C.  3553(a)(3) and (4) – The kind of sentences available and the sentencing ranges**
10          **established.**

11      These factors also weigh in favor of the probation office's recommended sentence, because the
12  ranges for sentencing include a mandatory minimum prison term of fifteen years with a maximum term
13  of fifty years.  Probation is expressly precluded by statute under 18 U.S.C. §§ 2422(b), 3561(a)(2).  The
14  prison term recommended by the probation office and the government is exactly half of the maximum
15  term that the court could impose, and it is very near the low-end of the range for sentencing under the
16  USSG.

17      **D.  3553(a)(5) – Any pertinent policy statements by the Sentencing Commission.**

18      Although many defendants and some courts have criticized the punishments for federal child
19  sexual exploitation offenses, Congress has not relented in legislating in this area.  Congress relatively
20  recently enacted the Justice for Victims of Trafficking Act of 2015, Pub. L 144-22, May 29, 2015.
21  Notably, too, although the Sentencing Commission made some adjustments to provisions of USSG
22  § 2G2.2 effective November 1, 2016, most of the provisions were not changed.  And although they are
23  only advisory, the Guidelines, at 5K2.0 Application Note 4, indicate that downward departures in "child
24  crimes and sexual offenses," including the offenses for which the defendant will be sentenced, are
25  strongly discouraged.  This only underscores that Congress and the Sentencing Commission generally
26  believe that the range for sentencing in a case such as before the court is not unduly harsh.  So these
27  factors weigh in favor of the sentence recommended by the probation office.
28

**E. The need to avoid unwarranted sentencing disparities.**

Many defendants sentenced in the Fresno division of the Eastern District of California have received sentences within, or close to, the relevant Sentencing Guidelines range for conduct similar to that engaged in by this defendant. It is always difficult to compare outcomes of sentencings in different cases, because each is dependent on its own facts and the considerations personal to a defendant, but the following are just a few examples:

Anthony Rodriquez (aka Lara) cr-20-236
- One victim, under age 12
- Defendant was 34 years old
- Offense level was 44 based on one count of sexual exploitation and one count of distribution
- Sentenced to 45 years imprisonment / 25 years supervised release

Nikko Perez  cr-18-211
- Multiple victims exploited through SnapChat and LiveMe
- Confessed when search warrant executed and pleaded guilty less than six months later without filing any motions and full appellate waivers
- Sentenced to 40 years imprisonment / lifetime supervised release

Jacob Blanco cr-17-140
- Multiple victims
- Pleaded guilty to five exploitation charges and one distribution charge
- Range for sentencing was 15 years to 170 years
- Offense level would have been 52
- Sentenced to 55 years imprisonment / lifetime supervised release

Andrew Sarnowski cr-20-169
- one count of sexual exploitation and one count of receipt
- One victim
- Sentenced to 40 years imprisonment / 10 years supervised release

The defendant's conduct in this case justifies the court in imposing the sentence recommended by the probation office and the government.

**F. Victim Impact and Restitution**

Although the government has continued to advise CV1 and a parent about the progress of this case, the government has not yet received an impact statement or fully documented claim for restitution. But the court can review a statement that CV1's mother provided to Magistrate Judge Boone on June 10, 2021, in the context of a detention hearing. Docket Item 12, Attachment A. That statement expresses some of the negative impact that Guereca's crimes have had on CV1 and CV1's family. The

government was advised that CV1 does intend to file a claim for restitution, so it might be necessary to schedule a separate hearing.

## V. CONCLUSION

The court should impose a term of imprisonment of 300 months followed by a lifetime term of supervised release that includes the standard and special conditions proposed in the revised PSR. The court should also impose two mandatory penalty assessments of $100 and the JVTA assessments of $5,000 for each count as well as the $50,000 assessment under the AVAA ($60,200 total).

Dated:  July 10, 2024

PHILLIP A. TALBERT
United States Attorney


By:  /s/ DAVID L. GAPPA
DAVID L. GAPPA
Assistant United States Attorney